Citation Nr: 1546186 
Decision Date: 10/30/15 Archive Date: 11/10/15

DOCKET NO. 09-07 786 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Chicago, Illinois


THE ISSUES

1. Entitlement to an increased rating in excess of 10 percent for hypothyroidism.

2. Entitlement to an increased rating in excess of 10 percent prior to October 24, 2014 and as of January 1, 2015 for right knee disability.

3. Entitlement to an increased rating in excess of 10 percent prior to November 14, 2014 and as of January 1, 2015 for left knee disability.

4. Entitlement to service connection for a heart disorder, to include as secondary to service-connected hypothyroidism.

5. Entitlement to service connection for sleep apnea, to include as secondary to service-connected hypothyroidism.

6. Entitlement to service connection for a low back disorder, to include as secondary to service-connected right and left knee disabilities.

7. Entitlement to service connection for a bilateral ankle disorder, to include as secondary to service-connected right and left knee disabilities.


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

T. Carter, Counsel


INTRODUCTION

The Veteran served on inactive duty for 2 months and 25 days then on active duty from August 1988 to August 1994.

This case comes before the Board of Veterans Appeals (Board) on appeal from September 2005 and April 2006 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Chicago, Illinois.

In April 2011, the Veteran testified at a Travel Board hearing at the RO before the undersigned Acting Veterans Law Judge. A transcript of that hearing has been associated with the physical claims file.

In April 2011, the Board remanded the issues of entitlement to service connection for a gastrointestinal disorder, including a hiatal hernia, and service connection for dysphagia, both to include as secondary to service-connected hypothyroidism, and service connection for an upper respiratory disorder, including sinusitis and rhinitis. Those issues were granted by the RO in a March 2014 rating decision and thus have not been returned to the Board. As this represents a full grant of the benefits sought, these issues are no longer before the Board. See Grantham v. Brown, 114 F.3d 1156 (Fed. Cir. 1997) (noting that a grant of service connection extinguishes appeals before the Board). Furthermore, the Veteran has not expressed disagreement with either the disability evaluation or effective date assigned. See 38 U.S.C.A. § 7105 (c) (West 2002); 38 C.F.R. §§ 3.104, 20.302, 20.1103 (2015).
 
In April 2011, the Board also remanded the remaining issues listed on the title page for additional development and adjudicative action and have been returned to the Board for further appellate review. In a January 2015 rating decision, the RO assigned a temporary evaluation of 100 percent for each knee disability based on surgical or other treatment necessitating convalescence, effective from November 14, 2014 to December 31, 2014, and 10 percent evaluations as of January 1, 2015. In a March 2015 rating decision, the RO determined clear and unmistakable error was found in the January 2015 rating decision regarding the effective date of the temporary evaluation for the right knee disability and adjusted the effective date to October 24, 2014. Since the 10 percent evaluations are not the maximum ratings available, these issues remain on appeal and are listed on the title page accordingly. See AB v. Brown, 6 Vet. App. 35 (1993).

The Virtual Benefits Management System (VBMS) electronic claims file contains November 2014 and December 2014 VA Forms 21-4138 (Statement in Support of Claim) by the Veteran, private treatment records pertaining to the service-connected right and left knee disabilities dated from October 2014 to November 2014, January 2015 Family and Medical Leave Act (FMLA) eligibility letter from the Department of Labor, January 2015 and March 2015 rating decisions, and August 2015 written appellate brief by Veteran's representative. The Board notes that although these identified private treatment records and FMLA letter were submitted by the Veteran without a waiver for initial Agency of Original Jurisdiction (AOJ) review, such waiver is not needed as the records are not relevant to the staged ratings on appeal. 

The Virtual VA (VVA) electronic claims file contains VA treatment records dated from May 2011 to January 2012, May 2012, and May 2011 to March 2014. The remaining records in VBMS and Virtual VA are either irrelevant or duplicate copies of evidence already associate with the physical claims file. As the appeal is remanded, the RO will have the opportunity to review the newly submitted evidence.

The appeal is REMANDED to the AOJ. 


REMAND

A remand is needed to obtain additional VA examinations for the service-connected hypothyroidism, right knee disability, and left knee disability. When a claimant asserts, or the evidence shows, that the severity of a disability has increased since the most recent rating examination, an additional examination is appropriate. VAOPGCPREC 11-95 (April 7, 1995); Snuffer v. Gober, 10 Vet. App. 400 (1997). Additionally, VA's duty to assist includes the conduct of a thorough medical examination that takes into account the records of the prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one. Green v. Derwinski, 1 Vet. App. 121, 124 (1991). In this case, a February 2013 VA treatment record (in VVA) documents the Veteran reported having constipation which is considered in the schedular rating criteria for the service-connected hypothyroidism under Diagnostic Code 7903. See 38 C.F.R. § 4.119. Additionally, an additional examination is needed to ascertain the current severity of the service-connected right and left knee disabilities since his knee surgeries.

A remand is needed for the issues of entitlement to service connection for heart disorder and sleep apnea, both to include as secondary to service-connected hypothyroidism, and a low back disorder and bilateral ankle disorder, both to include as secondary to service-connected right and left knee disabilities, to obtain adequate and clarifying VA medical opinions. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Pursuant to the April 2011 Board remand instructions, the Veteran was provided VA DBQ examinations for heart conditions, sleep apnea, back conditions, and ankle conditions in May 2012 by the same examiner.

The VA examiner indicated the Veteran does not currently have or has ever been diagnosed with a heart condition, thus did not provide a medical opinion. However, review of VA treatment records include angina pectoris with onset in July 2004 on active problem lists in March 2005 (physical claims file) and May 2011 (on VVA), and the Veteran asserts his symptoms of chest pain have been continuous since separation from service and his heart disorder is related to his service-connected hypothyroidism. The Board notes that angina is contemplated under cardiovascular-renal disease as a chronic disease. See 38 C.F.R. §§ 3.303, 3.307(a)(3), 3.309(a), 3.310. 

The VA examiner noted the Veteran's current diagnosis of obstructive sleep apnea. The examiner marked "yes" he can determine a baseline level of severity based upon medical evidence available prior to aggravation or the earliest medical evidence following aggravation, "yes" that the current severity is greater than the baseline and, "yes" it is at least as likely as not aggravated beyond its natural progression. On the other hand, the VA examiner stated in his rationale that sleep apnea was asymptomatic based on review of evidence after the diagnosis of hypothyroidism and the hypothyroidism has nothing to do with any other conditions mentioned, which included sleep apnea. The VA examiner provided an internally contradicting medical opinion regarding whether the Veteran's obstructive sleep apnea is, in fact, caused or aggravated by his service-connected hypothyroidism. As a result, a clarifying VA medical opinion is needed to adequately adjudicate the claim at this time. See 38 C.F.R. § 3.310.

The VA examiner also noted the Veteran's current diagnoses of lumbosacral strain and bilateral ankle strain. The VA examiner marked that the claimed disorders were less likely than not incurred in or caused by the claimed in-service injury, event, or illness. The rationale provided, "there is no reasonable medical rationale for the relationship of the knees to the ankles or back and thus they are not related. Nor are they aggravated beyond their natural progression. Both the ankles and the low back came after the knees." The last sentence of this rationale, regarding the order of onset of these disorders, is inconsistent with the negative opinion provided without any further explanation. As a result, clarifying VA medical opinions are needed to adequately adjudicate these claims at this time. See 38 C.F.R. § 3.310.

On remand, all outstanding records should be obtained. 

Accordingly, the case is REMANDED for the following actions:

1. Obtain and associate with the claims file any relevant outstanding VA treatment records dated since March 2014. If any requested records are not available, or the search for any such records otherwise yields negative results, that fact must clearly be documented in the claims file. Efforts to obtain these records must continue until it is determined that they do not exist or that further attempts to obtain them would be futile. The non-existence or unavailability of such records must be verified and this should be documented for the record. Required notice must be provided to the Veteran and his representative. 

2. After associating all additional records with the claims file, the Veteran should be afforded a VA examination for his service-connected hypothyroidism. The examiner is to be provided access to the claims folder, the VBMS file, the VVA file, and a copy of this remand. The examiner must specify in the report that these records have been reviewed. The examiner is to provide a detailed review of the Veteran's pertinent medical history, current complaints, and the nature and extent of any disability. A complete rationale for any opinions expressed must be provided.

The examiner must also report all signs and symptoms necessary for rating the Veteran's hypothyroidism, to include the presence of any associated fatigability, constipation, mental sluggishness, muscle weakness, mental disturbance, weight gain, cold intolerance, cardiovascular involvement, bradycardia, or sleepiness, utilizing the appropriate DBQ.

3. Afford the Veteran a VA orthopedic examination for his service-connected right and left knee disabilities. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. The examiner is requested to review all pertinent records associated with the claims file and to comment on the severity of the Veteran's service-connected disabilities.

The examiner should report all signs and symptoms necessary for rating the Veteran's knee disabilities under the rating criteria. In particular, the examiner should provide the ranges of motion in degrees and indicate whether there is any ankylosis; dislocated semilunar cartilage with frequent episodes of locking, pain, and effusion into the joint; or, the symptomatic removal of semilunar cartilage. He or she should also address whether the Veteran has recurrent subluxation or lateral instability, and if so, comment as to whether such symptomatology is slight, moderate, or severe. The examiner should further state whether there is any malunion or nonunion of the tibia and fibula.

The presence of objective evidence of pain, excess fatigability, incoordination, and weakness should also be noted, as should any additional disability (including additional limitation of motion) due to these factors. The examiner should address whether there is any additional functional impairment during flare-ups.

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. Because it is important "that each disability be viewed in relation to its history [,]" 38 C.F.R. § 4.1, copies of all pertinent records in the Veteran's claims file, or in the alternative, the claims file, must be made available for review.

4. Refer the Veteran's claims file to the May 2012 VA examiner or, if he is unavailable, to another suitably qualified VA examiner for clarifying opinions as to the nature and etiology of the Veteran's current heart disorder, sleep apnea, low back disorder, and bilateral ankle disorder. Additional examination(s) should be afforded if the new examiner determines that one is necessary. The examiner is requested to review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and the Veteran's own assertions. 

It should be noted that the Veteran is competent to attest to factual matters of which he had first-hand knowledge, including observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

a) Regarding a heart disorder, the examiner should indicate whether the Veteran has a current diagnosis. If no diagnosis is rendered, please refer to the diagnosis of angina pectoris as listed on active problem lists in March 2005 (physical claims file) and May 2011 (on VVA) VA treatment records. The examiner should opine as to whether it is at least as likely as not (50 percent or greater probability) that the Veteran's current heart disorder (i) manifested in service or is otherwise causally or etiologically related to the Veteran's military service, to include continuous symptoms since separation from service; if not, (ii) is caused by his service-connected hypothyroidism; if not, (iii) is aggravated by his service-connected hypothyroidism. 

b) Regarding obstructive sleep apnea, the examiner should opine as to whether it is at least as likely as not (50 percent or greater probability) that the disorder (i) is caused by his service-connected hypothyroidism; if not, (ii) is aggravated by his service-connected hypothyroidism. 

c) Regarding a low back disorder, to include lumbosacral strain, the examiner should opine as to whether it is at least as likely as not (50 percent or greater probability) that the disorder (i) is caused by his service-connected right and left knee disabilities; if not, (ii) is aggravated by his service-connected right and left knee disabilities.

d) Regarding a bilateral ankle disorder, to include bilateral ankle strain, the examiner should opine as to whether it is at least as likely as not (50 percent or greater probability) that the disorder (i) is caused by his service-connected right and left knee disabilities; if not, (ii) is aggravated by his service-connected right and left knee disabilities.

In this context, "aggravation" is defined as a permanent worsening of the disability beyond its natural progression. Temporary or intermittent flare-ups of symptoms of a condition, alone, do not constitute sufficient evidence of aggravation unless the underlying condition worsened.

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. Because it is important "that each disability be viewed in relation to its history[,]" 38 C.F.R. § 4.1, copies of all pertinent records in the Veteran's claims file, or in the alternative, the claims file, must be made available to the examiner for review.

5. Review each examination report and medical opinion to ensure that it is in complete compliance with the directives of this remand. If a report or opinion is deficient in any manner, the AOJ must implement corrective procedures. Stegall v. West, 11 Vet. App. 268, 271 (1998). 

6. After completing the above actions, and any other development as may be indicated by any response received as a consequence of the actions taken in the paragraphs above, the claims must be readjudicated on the basis of additional evidence. If any claim remains denied, a supplemental statement of the case must be provided to the Veteran and his representative. After the Veteran and his representative have had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
LANA K. JENG
Acting Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).